ROMAN EARL WARNER *v.* STATE OF INDIANA.

[No. 275S53. Filed September 9, 1976.]

*Hawk P. C. Kautz, John Kappos,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellant, Roman Earl Warner, was charged with kidnapping, Ind. Code § 35-1-55-1 (Burns 1975), rape, Ind. Code § 35-13-4-3 (Burns 1975), and assault and battery with intent to kill, Ind. Code § 35-13-2-1 (Burns 1975). After a trial by jury, he was found guilty of each charge. He was sentenced to life imprisonment for kidnapping, to not less than two nor more than twenty-one years for rape, and to not less than two nor more than fourteen years for assault and battery with intent to kill. All the sentences were to run concurrently. Appellant filed a motion to correct errors which was overruled. He appeals to this Court on two grounds: (1) that the deputy prosecuting attorney, in his rebuttal summation, denied appellant a fair trial by his prejudicial remarks concerning an out-of-court identification

of appellant by two eye witnesses and concerning the jury's duty, as the State of Indiana, to convict appellant, and that the court erred in denying appellant's motions for a mistrial because of these remarks; and (2) that the court erred in denying appellant's petition for examination as a criminal sexual deviant, pursuant to Ind. Code § 35-11-3.1-1 (Burns 1975).

With regard to the statements made by the deputy prosecutor, the State argues that appellant waived consideration of any error on appeal, because he did not state the reasons for his objections. Each objection referred to a specific sentence or sentences, and, in the context of the case, the reason for the objections should have been obvious to the court. Appellant did not waive appeal for lack of specificity. We agree with the State that appellant did waive appellate review of other remarks by the deputy prosecutor to which he made no objection at the trial level.

Considering the merits of appellant's claim that the court erred in refusing to declare a mistrial, we set out the first statement which appellant objected to:

"That defendant is here in Court because two eye witnesses recognized him and identified him and came in here and identified him for you."

Appellant objects to this as an evidentiary harpoon. Twenty days before trial, the prosecuting attorney had made a written stipulation that there would be no testimony or evidence referring directly or indirectly to any photographic or line-up identification. While the impropriety of this remark may have been obvious to counsel for the State, to appellant, and to the court, it is not likely that the jurors would have grasped its implications. Even if they understood the remark to refer to an identification other than one at the time of the crime, without any information about the circumstances of an earlier identification, they would give the testimony very little weight. The significance of this statement would have been obscure to the jury. We find no error in denying a mistrial on the basis

of this statement. *White* v. *State,* (1971) 257 Ind. 64, 272 N.E.2d 312, and cases set out therein.

The second statement made by the deputy prosecutor which was the reason for a second motion for a mistrial is:

"You're representing the State of Indiana at this time. You are the morals of this State and this County. . . . The punishment is serious, but where law ends tyranny begins and for that reason I'm asking you to find this defendant guilty of each and every count alleged in the information. As I said the evidence has been overwhelming and I am sure that on your consideration you will find that it's more than sufficient to carry our burden of beyond a reasonable doubt."

Appellant objects that the jurors would have interpreted the statement, "You're representing the State of Indiana at this time," to mean that they were prosecutors, since they knew that the State of Indiana had charged the defendant and conducted the prosecution. Such an interpretation is not reasonable. The jury was aware that its role was to decide between two parties, the State and appellant, and, after voir dire, admonishments, and instructions, it is impossible to imagine that they would believe themselves to be prosecutors. Considering this sentence with the following sentence, that they were the "morals of this State and this County," they would have understood the prosecutor's reference to be to their role as representatives of the community and residents of Indiana.

As for the deputy prosecutor's request that they should find appellant guilty of each count, although the punishment is serious, in order to avert tyranny, this is the type of remark which is unnecessary and unprofessional. We have noted that the prosecutor may state his opinion as to the guilt of the accused, if he prefaces it with a clear indication that his conclusion is based on the evidence the jury has heard. *Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193. However, it is misconduct to ask the jury to find the accused guilty or to imply that their failure to do so will have grave consequences for the criminal justice system. In this case, the reference to tyranny was an improper

exaggeration, but, without further argument along that line, we do not find that the court erred in denying the motion for a mistrial. We do not find that either of the remarks objected to put appellant in a position of grave peril. *White* v. *State, supra* at 320.

On August 31, 1974, the same day that the jury announced its verdict, appellant filed a petition for examination as a possible criminal sexual deviant, pursuant to Ind. Code § 35-11-3.1-2 (Burns 1975). Such a petition is to be filed after conviction and prior to sentencing. Ind. Code § 35-11-3.1-3 (a). On September 10th, appellant amended his petition, and the trial court ruled as follows:

> "The Court being duly advised now finds that the defendant herein has been convicted of rape by force, violence and coercion; the Court further finds that relief under the Criminal Sexual Deviancy Act is not available to a defendant until after he has been convicted of a sexual offense; the Court further finds that prior to said defendant's trial and conviction the Legislature amended the Criminal Sexual Deviancy Act to provide that a petition may not be made for examination as a possible criminal sexual deviate if the person has been convicted of rape committed by force, violence or coercion. (Burns § 9-40022) [sic] ; the Court further finds that said amendment is applicable to the defendant herein and therefore that said defendant is prohibited from petitioning for relief under the Criminal Sexual Deviancy Act; the Court therefore finds that defendant's amended petition for examination as a possible criminal sexual deviate should be denied."

Clearly, the basis for the denial of appellant's petition was the statutory amendment excluding persons convicted of rape by force.

Appellant argues that that amendment is an *ex post facto* law as applied to him. The crimes which the jury found appellant had committed occurred on March 22, 1973. At that time, the Criminal Sexual Deviancy statutes, Ind. Code §§ 35-11-3.1-1 to -37, permitted a person convicted of rape by force to petition for examination as a possible criminal sexual deviant. On February 15, 1974, the Indiana Legislature passed an amendment which excluded from the right to

petition persons "convicted of rape committed by force, violence or coercion." Acts 1974, P.L. 149, § 2, p. 634, now Ind. Code § 35-11-3.1-2.1. The amendment was effective immediately.

In this appeal, we are faced with two issues: (1) whether the statute excluding persons convicted of rape by force from the right to petition for consideration for treatment as a criminal sexual deviant is a criminal statute within the meaning of the *ex post facto* prohibition; and (2) whether the commission of the crime or the conviction is the triggering event which determines whether the statute at issue was passed "after the fact."

Article 1, § 10, cl. 1, of the United States Constitution and Art. 1, § 24, of the Indiana Constitution prohibit the State from passing any *ex post facto* law. The *ex post facto* prohibition applies only to laws which deprive a person accused or convicted of a crime of a substantial personal right which he would have had at the time he committed the offense. It does not apply to laws which change private or civil rights. Courts have determined whether statutes are criminal or non-criminal. E.g., *Cummings* v. *Missouri,* (1867) 71 U.S. (4 Wall.) 277, 325-32, 18 L.Ed. 356. More often, they have considered whether the statute changed a "substantial right" or "mere procedure."

In this case, the State correctly does not argue that the right to petition is a matter of mere procedure. However, the State does argue that the Criminal Sexual Deviancy Act [hereinafter C.S.D. Act] is not a criminal statute, because the proceedings under that Act are civil in nature, citing *State ex rel. Savery* v. *Criminal Court of Marion County, Div. One,* (1955) 234 Ind. 632, 130 N.E.2d 128. Assuming that the proceedings are civil in nature, e.g., nothing has to be proven by the State beyond a reasonable doubt, that finding does not satisfy the *ex post facto* objections. If the statute provides for an increase in punishment or deprives appellant of a possible avenue of lesser punishment, it is an *ex post facto* law. *Calder* v. *Bull,* (1798) 3

U.S. (3 Dall.) 386, 1 L.Ed. 648; *Kring* v. *Missouri*, (1883) 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506; *Lindsey* v. *Washington*, (1937) 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182. There is no question that the amendment changed the possible punishment to the disadvantage of appellant after he committed his offense. The C.S.D. Act applies only to those convicted of a crime, Ind. Code § 35-11-3.1-3, provides that the length of commitment may not exceed the maximum penalty for the crime of which the person was convicted, Ind. Code § 35-11-3.1-19, and provides that discharge due to recovery will bar any further sentence of incarceration for the crime of which he was convicted, Ind. Code § 35-11-3.1-33. By amending this statute, the Legislature removed one alternative form of punishment (or reformation, Indiana Constitution, Art. 1, § 18) for forcible rape from those available to a convicted person. To do so after appellant had committed the offense of rape and to apply the amendment to him was to pass an *ex post facto* law. Were we to permit such a change in punishment, it would be possible for the Legislature to learn of the crime of which a person were accused and then pass a statute excluding from consideration for a lesser form of punishment those who had committed a crime in the circumstances in which that person had committed it. The *ex post facto* prohibition effectively eliminates this possibility.

The United States Supreme Court has held that a state constitutional amendment which excluded a person from the effective practice of his profession because of an offense he had committed before the statute was passed imposed additional punishment to that prescribed when the act was committed and was an *ex post facto* law. *Cummings* v. *Missouri*, *supra*, at 328. The Court held that a state constitutional amendment was an *ex post facto* law when it abrogated a statute which had provided that a conviction of second degree murder was an acquittal of first degree murder, barring any retrial on that offense. The Court found that the amendment had changed the punishment, since the petitioner, although convicted of second degree murder, could be tried and punished

for first degree murder. The Court concluded also that any law passed after the commission of an offense which, "in relation to the offense, or its consequences, alters the situation of a party to his disadvantage," was an *ex post facto* law. *Kring* v. *Missouri, supra,* at 235.

The Court held that a state constitutional amendment which provided for a decrease in the number of jurors from the twelve required on the date of the offense to eight at the time of the petitioner's trial was an *ex post facto* law. The legislatures may prescribe altogether different modes of procedure, but they may not, in so doing, dispense with any of "those substantial protections with which the existing law surrounds the person accused of crime." *Thompson* v. *Utah,* (1898) 170 U.S. 343, 352, 18 S.Ct. 620, 42 L.Ed. 1061.

In *Lindsey* v. *Washington, supra,* the Court held that a new statute which made mandatory a fifteen year indeterminate sentence was *ex post facto* when applied to petitioner who had committed his offense at a time when the law provided for a determinate sentence of a maximum of fifteen years. The Court noted:

> "[W]hether the standards of punishment set up before and after the commission of an offense differ, and whether the later standard is more onerous than the earlier within the meaning of the constitutional prohibition, are federal questions which this Court will determine for itself." 301 U.S. at 400.

The Court looked to the practical operation of the two statutes and determined that the new statute made mandatory what was before only the maximum sentence. Noting that the petitioner might have been sentenced to the maximum, the Court answered its own observation:

> "But the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. . . . It is for this reason that an increase in the possible penalty is *ex post facto* . . . regardless of the length of the sentence actually imposed, since the measure

of punishment prescribed by the later statute is more severe than that of the earlier." (Citations omitted.) 301 U.S. at 401.

In conclusion, the Court held:

"Removal of the *possibility* of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will, operates to their detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old. It could hardly be thought that, if a punishment for murder of life imprisonment or death were changed to death alone, the latter penalty could be applied to homicide committed before the change. *Marion* v. *State*, 16 Neb. 349; 20 N.W. 289. Yet this is only a more striking instance of the detriment which ensues from the revision of a statute providing for maximum and minimum punishment by making the maximum compulsory. We need not inquire whether this is technically an increase in the punishment annexed to the crime, see *Calder* v. *Bull, supra,* 390. It is plainly to the substantial disadvantage of petitioners to be deprived of all *opportunity* to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term." (Emphasis added.) 301 U.S. at 401-02.

This Court, in *Dowd* v. *Sims,* (1950) 229 Ind. 54, 95 N.E.2d 628, held that a statute denying good time benefits to parolees was an *ex post facto* law. At the time of the defendant's offense, the good time statute provided for a reduction of a convicted person's sentence even if he were on parole. A new statute changed that law. We held that the new statute deprived the defendant of his good time, thus increasing his punishment, contrary to the *ex post facto* prohibition.

We note, as a contrast and clarification, some of the cases in which the United States Supreme Court has held that the new statute changed only procedure: *Hopt* v. *Utah,* (1884) 110 U.S. 574, 4 S.Ct. 202 [enlarging the class of competent witnesses to include convicted felons]; *Cook* v. *United States,* (1891) 138 U.S. 157, 11 S.Ct. 268 [changing the territorial jurisdiction of a court to include the place where the alleged offense took place]; *Gibson* v. *Mississippi,* (1896) 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 [changing the standards for

selecting grant and petit jurors]; *Thompson* v. *Missouri*, (1898) 171 U.S. 380, 18 S.Ct. 922 [permitting writings to be introduced into evidence for the purpose of handwriting comparison]; *Malloy* v. *South Carolina*, (1915) 237 U.S. 180, 35 S.Ct. 507, 59 L.Ed. 905 [changing the mode of execution from hanging to electrocution]; and *Beazell* v. *Ohio*, (1925) 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 [requiring the accused to show good cause in order to get a separate trial, when he had been jointly indicted]. These statutes did not

> "attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." *Hopt* v. *Utah*, 110 U.S. at 589.

This Court has determined that a statute which provided that appeals of a certain class of cases which were pending in this Court after a certain date should be transferred to the Appellate Court for final disposition was not *ex post facto*, because it only regulated procedure. In contrast is a statute "relating to criminal matters, retroactive in its operation, which alters the situation of an accused to his disadvantage, or deprives him of some lawful protection to which he is entitled. . . ." *In re Petitions to Transfer Appeals from Appellate Court to Supreme Court*, (1931) 202 Ind. 365, 378, 174 N.E. 812.

Clearly, the statute here does not simply make a change in "housekeeping" rules. Appellant has lost the right to be considered for rehabilitative treatment, rather than imprisonment, on the rape conviction. That possibility of receiving an alternative form of punishment was a substantial personal right. Although there is no right to the benefit the Legislature granted in the C.S.D. statute, there is a right to be considered for that benefit in accordance with the statutory procedure. And, although the ultimate decision is extremely discretionary, Ind. Code § 35-11-3.1-17, still the Legislature may not withdraw a benefit which provided a form of punishment con-

sidered lesser or more desirable, if it was available at the time of the offense. Because of our disposition of this issue, we do not consider appellant's equal protection arguments for application of the C.S.D. Act to him.

As for the second issue, there is no question that the triggering event is the commission of the offense.

> "[S]o far as [a determination of whether a law is *ex post facto* or not] depends on the *time* of its enactment, it has reference solely to the date at which the offense was committed to which the new law is sought to be applied. No other time or transaction but this has been in any adjudged case held to govern its *ex post facto* character." *Kring* v. *Missouri,* 107 U.S. at 226.

None of the cases cited above refers to any other date. The laws are expected to give each person notice of that conduct which is and is not prohibited and of the consequences which will follow a failure to conform to the law. Although, for example, the determination of a person's sentence follows months or years after his offense, the date of sentencing is clearly not the date for determining whether a statute which increases the number of years of imprisonment is an *ex post facto* law. No law can change the punishment for a crime after it has been committed.

We remand this case to the trial judge with instructions to permit appellant to file a petition for examination as a possible criminal sexual deviant pursuant to Ind. Code § 35-11-3.1-3 and to consider that petition as was permitted under the Criminal Sexual Deviancy Act prior to the amendment excluding persons convicted of rape by force. We note that the convictions for kidnapping and assault and battery with intent to kill are not affected by this petition. *Pieper* v. *State,* (1975) 262 Ind. 580, 321 N.E.2d 196. Otherwise we affirm the convictions.

Given, C.J., Hunter and Prentice, JJ., concur; Arterburn, J., concurs to affirm, dissents to remand.

NOTE.—Reported at 354 N.E.2d 178.