Paul N. BANTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1–1078A279.

Court of Appeals of Indiana,
First District.

June 5, 1979.

Rehearing Denied July 10, 1979.

Harriette Bailey Conn, Public Defender, Susan K. Carpenter, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant Paul N. Banton appeals the denial by the Fountain Circuit Court of his Petition for Post-Conviction Relief relating to his conviction and sentence for possession of burglary tools by a convicted felon under former Ind.Code 35–13–8–1. He contends (1) that the trial court erred in ordering that the sentence for this offense and for another offense committed while he was released on appeal bond shall run consecutively pursuant to former Ind.Code 35–8–7.-5–1 and (2) that the trial court erred in not vacating his conviction and sentence for possession of burglary tools in light of the repeal of Ind.Code 35–13–8–1.

## FACTS

Banton was charged by information in the Fountain Circuit Court on June 26, 1975, with the crime of possession of burglary tools by a convicted felon under former Ind.Code 35–13–8–1[1], which he committed on June 24, 1975. Banton was released on appearance bond on July 9, 1975. On July 29, 1975, former Ind.Code 35–8–7.5–1[2] became effective. That statute provided basically that if a person committed a crime while released on bail under a previous charge, then the sentence for the crime committed while he was on bail would not be served concurrently with the sentence for the previous charge. On November 25, 1975, Banton was convicted in Fountain Circuit Court, Cause No. 75–S–76, of possession of burglary tools. Banton was released on an appeal bond, and on December 16, 1975, he committed the crime of entering to commit a felony.

Banton was sentenced to two to fourteen years for possession of burglary tools on January 16, 1976, by the Fountain Circuit Court. On January 19, that court issued a commitment order. Later, on February 17, 1977, Banton was convicted in Tippecanoe Superior Court, Cause No. S–4055, of entering to commit a felony. The Tippecanoe court sentenced him to one to five years, but made no mention of the Fountain County conviction or of consecutive sentencing.

On February 22, 1977, Banton filed a petition in the Fountain Circuit Court to surrender himself to custody. A new commitment order was issued on that date. The new order did not mention consecutive sentencing or the conviction in the Tippecanoe Superior Court. However, a docket entry of that date said in pertinent part, "And the Court does now find that pursuant to IC 35–8–7.5–1 that the sentence in this case shall not run concurrently with that sentence imposed in the Tippecanoe Superior Court but shall run consecutively therewith."

On April 21, 1977, the Court of Appeals, in a memorandum decision, affirmed Banton's conviction in the Fountain Circuit Court of possession of burglary tools. On October 1, 1977, the new Indiana penal code became effective, repealing IC 35–13–8–1 (possession of burglary tools).[3] The new penal code did not contain any similar provision, but it did contain a savings clause purporting to preserve all criminal liabilities and penalties for offenses committed prior to October 1, 1977.[4]

1. "35–13–8–1 Previous conviction; prima facie evidence

    Sec. 1. If any person previously convicted of a felony be found having in his possession any burglar tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned not less than two (2) years nor more than fourteen (14) years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary. . . ."

2. "35–8–7.5–1 Sentencing for crimes committed while released on bail or recognizance; concurrent sentences; commencement of sentences

    Sec. 1. If a person shall commit a crime while he is released on bail or on his own recognizance, either while pending trial on a criminal charge or pending an appeal on a criminal conviction, the sentence imposed for the offense committed while he was released on the original charge shall not be served concurrently with any sentence imposed upon him for a conviction arising out of the original criminal charge upon which he was released. The person's sentence for the second conviction shall commence at such time as he: (1) is placed upon probation on the original charge; (2) is released upon parole on the original charge; or (3) has completed his term, whichever occurs first. . . ."

3. Act of February 25, 1976, Pub.L. No. 148, § 24.

4. "SECTION 150. (a) Neither this act nor Acts 1976, P.L. 148 affects:

    (1) rights or liabilities accrued;
    (2) penalties incurred; or
    (3) proceedings begun;

    before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted.

    (b) An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law.

    (c) Notwithstanding subsections (a) and (b) of this SECTION, a defense available un-

The Fountain Circuit Court on March 21, 1978, amended Banton's commitment order to reflect that court's intent, as stated in its docket entry of February 22, 1977, by inserting the following language: "Sentence to commence February 22, 1977, and shall run consecutively with the sentence imposed in the Tippecanoe Superior Court on February 17, 1977, Cause S–4055."

Banton filed his Petition for Post-Conviction Relief on May 18, 1978, in the Fountain Circuit Court, and on June 19, 1978, the court denied Banton's petition. On July 11, 1978, Banton filed his Motion to Correct Errors, which was denied by the Fountain Circuit Court on the same day. On October 10, 1978, this court acquired jurisdiction of Banton's appeal.

## ISSUES

Banton presents the following issues to this court for review:

1. Whether or not the court erred in ordering that the sentence imposed run consecutively to the sentence imposed for an offense committed while Banton was on bond for this offense; whereas:

    (a) The applicable statute, IC 35–8–7.-5–1, specifically provides that the sentence imposed for an offense committed while on bond shall run consecutively to the sentence imposed on the original charge, and not vice versa;

    (b) Banton was charged with this offense on June 26, 1975. IC 35–8–7.5–1 was not effective until July 29, 1975, and any application of said statute to Banton violates our constitutional prohibition of *ex post facto* laws;

    (c) Banton was sentenced on January 19, 1976, and commitment ordered without any reference to consecutive sentencing or the possibility thereof; the Court thereafter in *ex parte* proceedings, without notice to Banton or Banton's having any opportunity to respond, and in Ban-

ton's absence, issued on February 22, 1977, a new commitment ordering the sentence to run consecutively to a sentence imposed in Tippecanoe County, in violation of Banton's due process rights.

2. Whether or not the court erred in not vacating and rendering null and void Banton's conviction and sentence for possession of burglary tools, under IC 35–13–8–1, said statute having been repealed and not replaced by the new penal code, effective October 1, 1977.

*Issue 1(a): Order of Consecutive Sentences*

■ Banton contends, in essence, that when the Fountain Circuit Court issued its commitment order on February 22, 1977, and its amendment to that order on March 21, 1978, the court in effect ordered that the sentence for the Tippecanoe County conviction would precede the sentence for the Fountain County conviction. This, he asserts, violates the express terms of IC 35–8–7.5–1 which, he says, requires the sentence for the original charge to run prior to the sentence for the offense committed while the defendant is released on bond under the original charge.

■ We agree with Banton's interpretation of IC 35–8–7.5–1 with regard to the order in which consecutive sentences are to run.[5] However, we think that the Fountain Circuit Court's attempts on February 22, 1977, and on March 21, 1978, to order that Banton's sentences run consecutively were mere surplusage and of no effect. The sentence imposed by the Fountain Circuit Court for possession of burglary tools was for the original offense, and therefore it was not directly affected by IC 35–8–7.5–1, which required that the sentence for the offense committed while the accused was on bail for the original charge not run concurrently with the sentence for the original charge. Thus, it is the responsibility of the State to make certain that Banton's com-

der IC 35–41–3 is available to any defendant tried or retried after September 30, 1977." Act of April 12, 1977, Pub.L. No. 340, § 150.

5. IC 35–8–7.5–1 was repealed by Act of February 25, 1976, Pub.L. No. 148, § 24, and was replaced with IC 35–50–1–2. We make no judgment on how the new statute handles the order of consecutive sentences.

mitment order issued by the Tippecanoe Superior Court in Cause No. S–4055 (for the offense of entering to commit a felony, committed while Banton was released on appeal bond from the original Fountain County conviction) specifies that the sentences are to run consecutively and not concurrently.

We do not mean to imply that because the consecutive sentencing by the Fountain Circuit Court was of no effect and the Tippecanoe Superior Court failed to order consecutive sentencing, Banton is exempt from the consecutive sentencing provisions of IC 35–8–7.5–1. On the contrary, our Supreme Court has indicated that IC 35–8–7.5–1 is operative even when not mentioned by the trial court:

> "The defendant argues that his sentences should not be served consecutively to his prior eight year term since the trial court's order does not specifically state they are to be consecutive. However, the record clearly shows that the defendant was free on an appeal bond when the instant crimes were committed and therefore his sentences must not be served concurrently but must be served in accordance with the provisions of Ind.Code § 35–8–7.5–1 (Burns Supp.1977)." *Hutcherson v. State*, (1978), Ind., 380 N.E.2d 1219, 1223.

Consequently, we need not determine whether or not the Fountain Circuit Court correctly stated the order in which the consecutive sentences must run.

### Issue 1(b): Ex Post Facto Application of IC 35–8–7.5–1

Banton contends that if IC 35–8–7.5–1 applies to him, then it violates the prohibitions against enactment of *ex post facto* laws found in the United States Constitution, article 1, § 10, clause 1, and the Indiana Constitution, article 1, § 24. He argues that because his conviction in the Fountain Circuit Court on November 25, 1975, was for an offense he committed on June 24, 1975, and because IC 35–8–7.5–1 (consecutive sentencing) did not become effective until July 29, 1975, IC 35–8–7.5–1 is

an *ex post facto* law if it has the effect of requiring his Fountain County conviction and his Tippecanoe County conviction to run consecutively. Banton emphasizes the date of sentencing determines whether or not a law has been passed too late to apply constitutionally to the accused, citing *Warner v. State*, (1966) 265 Ind. 262, 272, 354 N.E.2d 178, 185. He also cites *Warner, supra*, for the proposition that "[n]o law can change the punishment for a crime after it has been committed." 265 Ind. at 272, 354 N.E.2d at 185. Thus, Banton argues, he should not be sentenced under a law which was not in effect until after he committed the crime.

We have no quarrel with Banton's definition of an *ex post facto* law. Long ago, Chief Justice Marshall defined an *ex post facto* law as "one which renders an act punishable in a manner in which it was not punishable when it was committed." *Fletcher v. Peck*, (1810) U.S. (6 Cranch) 87, 138, 3 L.Ed. 162. However, Banton has misapplied the prohibition of *ex post facto* laws in his case. In *Warner, supra*, our Supreme Court said,

> "Article 1, § 10, cl. 1, of the United States Constitution and Art. 1, § 24, of the Indiana Constitution prohibit the State from passing any *ex post facto* law. The *ex post facto* prohibition applies only to laws which deprive a person accused or convicted of a crime of a substantial personal right which he would have had at the time he committed the offense. . . ." 265 Ind. at 267, 354 N.E.2d at 182.

Banton has not been deprived of any right which he had at the time he committed the crime of possession of burglary tools on June 24, 1975. Regardless of the applicability of IC 35–8–7.5–1, he will have to serve the sentence he received for that crime before he can be released. As we have already held, IC 35–8–7.5–1 specifies that the sentence for the conviction in the Fountain Circuit Court of possession of burglary tools be served prior to the sentence for the conviction in the Tippecanoe Superior Court of entering to commit a felony. Thus, it is only the Tippecanoe Superior Court sen-

tence which is affected by the enactment of IC 35–8–7.5–1.

The Supreme Court in *Warner, supra*, stated that "[t]he laws are expected to give each person notice of that conduct which is and is not prohibited and of the consequences which will follow a failure to conform to the law." 265 Ind. at 272, 354 N.E.2d at 185. We think that both this policy and the constitutional prohibitions of *ex post facto* laws have been satisfied here. Banton received the same sentence for his June 24, 1975, commission of the crime of possession of burglary tools that he would have received had IC 35–8–7.5–1 never been enacted. He committed the crime of entering to commit a felony on December 6, 1975, long after IC 35–8–7.5–1 had taken effect on July 29, 1975. Judge Hoffman, writing for this court, has already stated that "a person is required to comply with the law from the time of its passage even though he does not know of its existence." *Lohm v. State,* (1978) Ind.App., 380 N.E.2d 561, 565. Consequently, Banton is not being deprived of any right he had at the time he committed the crime of entering to commit a felony by having to serve his sentence for that crime consecutively to his sentence for possession of burglary tools. Banton had more than an adequate opportunity between July 29 and December 6 to modify his behavior so that he would not commit an offense for which he would have to serve a sentence consecutively to another sentence.

We hold that the application of the consecutive sentencing provisions of IC 35–8–7.5–1 to Banton does not violate the constitutional prohibitions of *ex post facto* laws.

### Issue 1(c): Notice and Hearing in Modifying a Sentence

Banton contends that when the Fountain Circuit Court modified his commitment order on February 22, 1977, and on March 21, 1978, to indicate his consecutive sentencing, it did so *ex parte*, thus depriving him of his right to notice and a hearing under the fourteenth amendment of the United States

Constitution and of his right to written notice and an opportunity to be present and to have counsel present under Ind.Code 35–4.1–4–17.[6]

■ Because we have already held that the attempts of the Fountain Circuit Court to order consecutive sentencing were surplusage and of no effect, the procedural errors, if any, which that court might have made in ordering consecutive sentencing are harmless.

### Issue 2: Repeal of IC 35–13–8–1

Banton makes a number of arguments in support of his contention that the repeal of IC 35–13–8–1 (possession of burglary tools) without replacement entitles him to have his prior conviction and sentence for that offense vacated.

First, he asserts that the repeal constituted an express legislative determination that such conduct should no longer be considered a crime or punishable as a crime. Banton admits that there is a general savings clause in Ind.Code 1–1–5–1 which purports to preserve any penalty or liability incurred under a statute prior to its repeal, unless the repealing act specifically provides otherwise. However, he contends that courts usually do not look to a general savings clause to determine legislative intent when the intent is apparent on the face of a statute. Banton argues that where, as here, the obvious legislative intent is to decriminalize certain behavior, the courts generally do not punish past behavior which would no longer be a crime after the statute is repealed.

Banton also admits that a specific savings clause was enacted in connection with the legislation repealing IC 35–13–8–1. That savings clause says, in part,

"SECTION 150. (a) Neither this act nor Acts 1976, P.L. 148 affects:

(1) rights or liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

6. IC 1971, 35–50–1A–17 (Burns Code Ed., Repl. 1979).

before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted.

(b) An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law." Act of April 12, 1977, Pub.L. No. 340, § 150.

He argues, nonetheless, that (1) the savings clause was originally developed as a remedy for the problem created by the *ex post facto* doctrine; (2) when a penalty was increased by statute at common law, a prosecution pending at that time abated by operation of the *ex post facto* doctrine and the implied repeal of the former statute; (3) as a result, guilty criminal defendants went unpunished; (4) the savings clause was designed to fill this gap. Banton further contends the savings clause has no purpose where, as here, the statute making certain acts a criminal offense is repealed intentionally.

█ Regardless of the applicability of the general savings clause of IC 1–1–5–1 to this case, and regardless of the accuracy of Banton's explanation of the historical development of the savings clause, we think that the intent of the legislature was clear when it enacted Pub.L. No. 340, § 150. The legislature obviously intended to preserve the convictions and sentences for crimes such as possession of burglary tools even after the statutes making such behavior criminal were repealed. *See Watford v. State*, (1979) Ind., 384 N.E.2d 1030; *Rivera v. State*, (1979) Ind.App., 385 N.E.2d 455.

Banton next argues that the repeal of a criminal statute renders moot the issue of the State's right to pursue a defendant and to punish him under that statute. He further argues that even where an issue is moot, an appellate court can decide it if it is a question of great public interest, and he says that the question of continued incarceration under a repealed statute is of great public interest and cites *State v. Vore*, (1978) Ind., 375 N.E.2d 205.

*Vore, supra*, involved a prosecution for obscenity which was dismissed because a certain section of the relevant statute contained exemption provisions which the trial court found were violative of the equal protection clause of the fourteenth amendment. While the State's appeal from the dismissal was pending, the legislature repealed the offensive exemptions. Justice DeBruler, for the majority, acknowledged the inherent authority of a court to raise the issue of mootness on its own motion where the record is clear. He defined a moot question as one which is "purely hypothetical, abstract, academic, and involving no subject matter upon which the court's judgment might operate." 375 N.E.2d at 207. Dismissal of an appeal was said to be "appropriate where the party appealing loses or abandons its actual interest or rights involved in the appeal." 375 N.E.2d at 207. Justice DeBruler found that the State's interest in the appeal lay in maintaining the exemption provisions as part of the obscenity statute. Because the legislature had already deleted that provision from the statute by the time the Supreme Court decided the case, the State's interest was moot. Furthermore, the legislature's determination that the public interest would be served best by deleting the exemption eliminated any public interest from the question of whether or not the legislature could constitutionally include such an exemption provision in its obscenity statute. Consequently, the State's appeal was dismissed.

█ We think that Banton's case is not moot and that he has misapplied the *Vore* case to his own. He first asks us to hold that, as to the State's right to continue to punish him, the case is moot. Then he argues that despite the mootness of the case, his contention that the statute should no longer apply to him is of such great public importance that we should consider his arguments anyway. It must be remembered that in *Vore, supra*, the State appealed the dismissal of its prosecution, whereas here Banton is appealing his conviction. Thus, Banton's argument that the issue of the State's power to incarcerate him is moot is specious. It is Banton who is raising the

question of the statute's validity, not the State. Moreover, in *Vore, supra,* the obscenity provision was repealed before the defendant could be convicted, whereas Banton was convicted and sentenced several months before the effective date of repeal of the statutory crime of possession of burglary tools. We, therefore, conclude that Banton's situation is sufficiently distinguishable from that in *Vore* to allow us to decide this case and to hold that it is not moot.

◼ Banton also maintains that to continue to imprison him after the offense of which he was convicted was repealed violates article 1, § 18 of the Indiana Constitution, which says, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." He reasons that if the act for which he was convicted is no longer to be considered a criminal offense, then there is no reformative, preventive, deterrent, or educational value in continuing his incarceration, and the only reason left for holding him is vindictiveness.

In *Watford v. State, supra,* the defendant had been convicted of kidnapping and sentenced prior to the effective date of the new penal code. The new code redefined the crime of kidnapping and substantially decreased the sentence which could be imposed. After the new code took effect, the defendant filed his belated appeal, arguing, *inter alia,* that he could no longer be sentenced under the old law in light of article 1, § 18 of the Indiana Constitution. Justice Prentice, writing for the Supreme Court, swept aside this argument:

". . . we need not here pass upon his contention that sentencing under the prior statute, following an ameliorative amendment effective between the commission of the offense and the sentencing, is constitutionally impermissible under Article I, § 18 of the Constitution of Indiana, because he was sentenced prior thereto, and, as hereinafter held, said sentencing was a final judgment." 384 N.E.2d at 1032.

This principle of *Watford* applies to Banton's case as well. He was convicted and sentenced under a statute which was valid at the time, and he cannot now be allowed to overturn the final and valid judgments of conviction and sentencing.

◼ Finally, Banton contends that his continued incarceration after the repeal of IC 35–13–8–1 raises serious questions under the equal protection clause of the fourteenth amendment. He says that there is an egregious discrepancy between his continued incarceration and the fact that the acts for which he was incarcerated ceased to be a crime after October 1, 1977.

In *Rivera v. State, supra,* the defendant argued that although he was convicted of robbery and sentenced almost three years prior to the effective date of the new penal code, he was entitled to have his sentence reduced to conform to the new, more lenient sentencing provisions. Judge Hoffman, writing for this court, responded as follows:

". . . Appellant first relies on Article 1, § 23 of the Indiana Constitution in alleging that the General Assembly has created an unconstitutional classification of those convicted prior to October 1, 1977 and those convicted after, so as to deny him equal protection of the law.

This argument is not persuasive and must be rejected upon analysis. Legislation defining crimes and assessing penalties does not create different classes of people. Criminal statutes apply exclusively to one class of people, those who violate the law, and they relate to the specific point in time that a violation occurs. Upon alteration of the criminal law, individuals subsequently convicted are not similarly situated and cannot be equated to those previously convicted. Thus, appellant's argument is without merit." 385 N.E.2d at 457.

Although Banton raised his equal protection claim under the fourteenth amendment to the United States Constitution rather than under the privileges and immunities clause, article 1, § 23 of the Indiana Constitution, these two provisions are interpreted to be equivalent. *See Taylor v. State,*

(1968) 251 Ind. 236, 236 N.E.2d 825; *Haas v. South Bend Community School Corp.,* (1972) 259 Ind. 515, 289 N.E.2d 495. Thus, Banton is not the victim of any unconstitutional classification inasmuch as he does not contend that he was treated any differently under the law from any other person who was convicted of possession of burglary tools prior to the effective date of the new penal code.

The trial court's denial of Banton's Post Conviction Relief Petition is affirmed.[7]

LYBROOK and ROBERTSON, JJ., concur.

---

7. The Attorney General of Indiana is now instructed to inform the Prosecuting Attorney of Tippecanoe County that Banton's sentence imposed on him in the Tippecanoe Superior Court in Cause No. S–4055 should run consecutively to the sentence imposed on Banton in the Fountain Circuit Court in Cause No. 75–S–76 in order that the record in the Tippecanoe Superior Court will show on its face the conviction of Banton in the Fountain Circuit Court and that proper legal steps may be taken to correct the Tippecanoe County sentence in Cause No. S–4055.