**Buford Ray LIPPS, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

**No. 778S147.**

Supreme Court of Indiana.

Sept. 12, 1979.

Harriette Bailey Conn, Public Defender, Susan K. Carpenter, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

This case comes to this Court on appeal from the denial of petitioner's petition for writ of habeas corpus, treated and decided in the Madison Circuit Court as a petition for post-conviction relief. The petitioner Buford Ray Lipps, had been convicted of inflicting injury while attempting robbery, Ind.Code § 35–13–4–6 (Burns 1975), and was sentenced to life imprisonment on De-

cember 22, 1966. On February 15, 1974, petitioner was sentenced to a twenty-year determinate term for armed robbery, Ind. Code § 35–13–4–6 (Burns 1975). The sole issue raised in this post-conviction proceeding is whether petitioner is entitled to good time credit on his twenty-year term.

Petitioner argues that the denial of good time credit on his twenty-year determinate term constitutes an unconstitutional *ex post facto* application of Ind.Code § 11–7–6.1–2 (Burns Supp.1977). Resolution of this issue requires answering two questions:

1. Whether the law under the prior statute, Ind.Code § 11–7–6–1 (Burns 1973), permitted an inmate serving a life sentence to receive good time credit on his concurrent twenty-year determinate sentence; and, if so,

2. Whether application of the later statute, Ind.Code § 11–7–6.1–2 (Burns Supp. 1977), constitutes an *ex post facto* law in violation of Article 1, § 24 of the Indiana Constitution and Article 1, § 10, cl. 1 of the United States Constitution.

I.

Ind.Code § 11–7–6–1 (Burns 1973) provided:

"Every inmate who is now or hereafter may be confined in the Indiana State Prison, Indiana Reformatory, or Indiana Women's Prison, *for a determinate term of imprisonment*, and who, while an inmate in such institution, shall have no infractions of the rules and regulations of the institution, nor infractions of the laws of the state of Indiana or laws of the United States recorded against him or her, and who performs in a faithful manner the duties assigned to him or her while an inmate, shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective years of his or her sentence, including time being served for unpaid fine or costs, and pro rata for any part of a year when the sentence is for more or less than a year." [Emphasis added.]

■ Under that law, which was in effect at the time of petitioner Lipps's sentencing, an inmate was not entitled to good time credit on a life sentence since "a life sentence is neither determinate nor indeterminate." *Jones v. Jenkins*, (1978) Ind., 372 N.E.2d 1163, 1164. However, this Court has never decided whether a person who is serving a life sentence is eligible for good time credit on a concurrent determinate sentence.

The statute provided that a person confined in an Indiana correctional institution for a determinate period of time "shall be entitled to a diminution of time from his or her sentence . . . ." Ind.Code § 11–7–6–1 (Burns 1973). A table in the statute provides a means of determining how much diminution of time shall accrue to any sentence from one to twenty-one years inclusive.

■ Petitioner had been given two distinct sentences by two different courts. The statute did not provide that a person serving a determinate sentence would be excluded from good time provisions if he was also serving a life sentence. Therefore, under Ind.Code § 11–7–6–1 (Burns 1973), a person serving a determinate sentence must be classified so that he may earn good time credits regardless of what other sentences had been imposed upon that person. This is consistent with the individual treatment of distinct sentences when one is determinate and another is indeterminate, in which case good time credits would accrue to the indeterminate sentence under a different statute, Ind.Code § 11–7–7–1 (Burns 1973).

### II.

Ind.Code § 11–7–6.1–2 (Burns Supp.1977), now repealed, went into effect on February 19, 1974, four days after petitioner was sentenced, and provided as follows:

"*Classification of inmates—Schedule of good time earned [Repealed effective October 1, 1977].*—Every inmate who is now or hereafter may be confined, upon conviction of a felony, in a correctional institution under the supervision of the Indiana department of correction, *except*

*those inmates under sentence of death or life imprisonment*, shall at all times during such confinement be assigned to one [1] of the following four [4] time earning classes and shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective months of his or her sentence, prorated for any part of a month, including time being served for unpaid fines or costs. Class assignments shall be made in accordance with the procedure provided in this chapter [11–7–6.1–1—11–7–6.1–8]. This good time shall apply both toward an inmate's discharge date and his parole eligibility date." [Emphasis added.]

Assuming, without deciding, that this statute specifically excludes inmates serving life sentences from good time credit regardless of what other sentences are being served either concurrently or consecutively, we now turn to petitioner's *ex post facto* argument.

■ Ind.Code § 11–7–6–2 (Burns 1973) provides that the term "inmate" is to be construed as relating solely to those persons who are "within the walls" of a state correctional institution "*or* are elsewhere working or being *under the direct control* of the prison officials . . . ." [Emphasis added.] The later statute is framed in terms of the control of the department of correction. Ind.Code § 11–7–6.1–1 (Burns Supp.1977). We find that petitioner was constructively under direct control of prison or department of correction officials from the date of sentencing on February 15, 1974. A similar constructive interpretation was reached in *Dunn v. Jenkins*, (1978) Ind., 377 N.E.2d 868, when this Court found that a prisoner who is discharged from one sentence and begins a second consecutive sentence is to be deemed as being "received into" an institution when in fact he has been incarcerated in that institution continuously.

This Court has long ago held that "[t]he law allowing him credit for good time entered into the judgment as if written therein . . . ." *Woodward v. Murdock*,

(1890) 124 Ind. 439, 444, 24 N.E. 1047, 1048. Although not applicable here, current statutory authority dictates a result similar to that reached in *Woodard*.

"A term of imprisonment begins on the date sentence is imposed, unless execution of the sentence is stayed according to law." West's Ann.Ind.Code § 35–4.1–5–1(c) (1978).

Therefore, regardless of any *ex post facto* considerations, it would appear that Ind. Code § 11–7–6–1 (Burns 1973) should be applied to petitioner.

Furthermore, this Court has held:

"If the statute provides for an increase in punishment or deprives appellant of a possible avenue of lesser punishment, it is an *ex post facto law*." *Warner v. State*, (1976) 265 Ind. 262, 267, 354 N.E.2d 178, 182.

In *Warner* we held that a statute exempting rapists from the provision of the Criminal Sexual Deviancy statutes could not be applied to a person convicted prior to the effective date of the exempting statute. We find the *Warner* case controlling here.

The state contends that the question of good time credit on a determinate sentence being served in the shadow of a life sentence is a moot issue since the life sentence will outlast the determinate sentence. This argument ignores the possibility of favorable action on the part of the Clemency Commission. In that case, petitioner's confinement would be terminated but for his determinate sentence. Good time credits would in the event of clemency be of vital importance to petitioner's interests. We note that petitioner has served over ten years of his life sentence and is therefore eligible for consideration by the Clemency Commission.

For all the foregoing reasons the judgment of the trial court is reversed and the cause remanded to the trial court with instructions to refer this matter to the department of correction for classification of petitioner for diminution of time from his determinate sentence under Ind.Code § 11–7–6–1 (Burns 1973) as of the date of petitioner's sentencing, February 15, 1974.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion.

PIVARNIK, Justice, dissenting.

I must dissent from the majority opinion wherein it holds that this defendant has a right to have his good time credit computed on his twenty year determinate sentence from the date of his conviction.

In the first place we must get the facts straight. Although this defendant was convicted of the twenty year determinate sentence on February 15, 1974, he was not received into the prison under that commitment until February 21, 1974. Although neither of the parties presented much evidence to aid us in determining when he was actually assigned as a prisoner in the institution, the commitment from the Madison Circuit Court shows that the prison received it on February 21. This is important since the statutes we are talking about have nothing to do with the date of conviction. By their very language both Ind.Code § 11–7–6–1 (Burns 1973) and Ind.Code § 11–7–6.1–2 (Burns Supp.1977) provide:

"Every inmate who is now or hereafter may be confined in . . . ."

These are not criminal statutes but are statutes relating to the Department of Corrections. To further show its intent, the Legislature in the following section, Ind. Code § 11–7–6–2, entitled "Definitions-Confined-Inmate-Good-time-", provided:

"The terms 'confined' and 'inmate' as used in this act [11–7–6–1—11–7–6–5] shall be considered and construed as relating solely to persons who are actually within the walls of the prisons or upon the grounds thereof, . . . ."

This defendant then gained no rights as to accrual of good time or the application of the good time statute on a determinate term until he was actually in the prison and assigned by the Corrections Department for this charge. This did not take place until on or after February 21, two days after the effective date of 11–7–6.1–2, which became

effective February 19, 1974. Up until that time he was still serving his life term in the prison. This Court recognized this situation and the status of prisoners in the correction system in *Dunn v. Jenkins*, (1978) Ind., 377 N.E.2d 868, where the prisoner had consecutive sentences and upon the completion of one was set up to begin the service of the other. It was pointed out therein that when the prisoner finished the one sentence he was shown to have been discharged from his first commitment and when he took up his new commitment was given a new prison number and started again in the system as a new inmate under a new commitment. The fact that he had been incarcerated on the previous commitment and had already been in the institution under a particular assignment, did not change his status under the new commitment that he just began to serve. This Court approved that manner of handling the defendant's second commitment and stated it was not a demotion from his prior standing earned under previous commitments and that he could be treated as any new prisoner is treated in his assignment as to status and good time earning.

Since each of the above statutes affected this inmate and all others only after they had become confined under a conviction in a correctional institution, the holding in *Woodward v. Murdock*, (1890) 124 Ind. 439, 424 N.E. 1047, has no application to this defendant's situation.

Furthermore, in *Jones v. Jenkins*, (1978) Ind., 372 N.E.2d 1163, this Court compared the two statutes in question before us and their effect on a "lifer" in the corrections system and found that the Legislature was justified in finding that those serving life imprisonment sentences necessitate a different type of release program than those used with non-lifers and that the distinction was constitutional. We found in that case that Ind.Code 11–7–6–1 provided for good time classification for one under a determinate term of imprisonment and that Ind. Code 11–7–6.1–2 provided for the same for a person in the institution except those inmates under sentence of death or life imprisonment. We also found in that case to be the law that a person under a life sentence never was entitled to any good time assignment, that a life term is neither determinate nor indeterminate and therefore the second statute did not take away anything the defendant had or had earned and therefore was not *ex post facto* as it applied to him. The ruling in *Jones, supra*, applies equally to *Lipps*, here. § 11–7–6–1 did not apply to Lipps while he was serving his time under the life sentence since he was not serving a determinate sentence and had no good time program assigned to him under that statute. Neither does § 11–7–6.–1–2 apply to this defendant in its fixing of good time classes and assignments because the statutes excepts any inmate under a life imprisonment sentence.

Buford Ray Lipps is in the prison system under whatever program they have for those serving life terms and the trial court properly denied him post-conviction relief.