DELORES M. SCHOEFF *v.* PAULINE McINTIRE ET UX.

[No. 472A178. Filed September 19, 1972.]

*John M. Clifton, Jr., J. A. Bruggeman, Barrett, Barrett &
McNagny,* of Fort Wayne, for appellant.

*Theodore L. Bendall, Gordon, Glenn, Miller, Bendall &
Branham,* of Huntington, *Phil M. McNagny, Jr., Gates, Gates
& McNagny,* of Columbia City, for appellees.

SHARP, J.—This appeal concerns an original action filed by
Pauline McIntire, Appellee, against Dolores M. Schoeff, Ap-
pellant, for personal injuries resulting from an accident while
Pauline McIntire was riding in an automobile operated by
Dolores M. Schoeff. Gerald McIntire filed a separate suit for
medical and hospital expenses, loss of wages, and loss of
consortium and services of his wife, Pauline. The two cases
were consolidated for trial and were tried to the Whitley
Circuit Court without the intervention of a jury. The trial
court found in favor of both Pauline and Gerald McIntire and
rendered judgment accordingly. The sole issue presented for
review is the overruling of the Motion to Correct Errors.

The primary question is whether there was sufficient evi-

dence to support the finding that the intended activities to be rendered by the Appellee, Pauline McIntire, to the Appellant, Dolores M. Schoeff, were of such a material benefit to the latter so as to preclude the Appellee from being considered a "guest" under the Indiana Guest Statute, IC 1971, 9-3-3-1, Ind. Ann. Stat. § 47-1021 (Burns 1965). Thus, the primary area of controversy centers on the legal status of Pauline McIntire at the time of the accident, i.e., was she a "passenger for consideration" or merely a "guest"? The question may be more precisely defined as follows: Is a social acquaintance, who is to help paint a portion of a new house for a friend in return for lunch and transportation, a guest or a passenger for consideration when she is being transported to said house?

All parties to this action had resided in or about the area of Mt. Etna in Huntington County for approximately fifteen years. Appellee and Appellant had been social acquaintances for much of that time and had engaged in various community activities and private clubs together. Within a few days prior to the date of the accident (June 8, 1966), Appellant telephoned the Appellee and asked her to come to the new house on June 8, 1966 to help in painting at least the kitchen area, in exchange for transportation to and from the house and lunch, both of which were to be furnished by the Appellant, Dolores M. Schoeff. There is conflicting evidence as to whether the Appellee, Pauline McIntire, ever volunteered her services prior to the request of Dolores M. Schoeff.

After picking up the Appellee and several other women, it became necessary for Dolores M. Schoeff to drive to Lancaster to exchange some paint. For this purpose she proceeded north from Mt. Etna and then turned east on County Road 400S at a slow rate of speed. The weather was warm, visibility clear, daylight and the highway was dry. At approximately 1/8 mile from the point where County Road 400S crosses Majenica Creek, the road changes from gravel to blacktop

and curves to the south and goes downhill. The Appellant was unfamiliar with the road, never having driven it before. Instead of observing the highway, Dolores M. Schoeff diverted her attention to the Wamsley house along the side of the road and failed to keep the automobile on the traveled portion of the highway, causing the automobile to go off the road to the driver's left down an embankment and into Majenica Creek. Although there is some contention to the contrary by the Appellant we find there is sufficient evidence to infer negligence in this case.

In determining whether Pauline McIntire was a guest or a passenger for consideration, it is necessary to first determine if the activities to be engaged in by Pauline McIntire would have conferred a material benefit upon Dolores M. Schoeff. The basic distinction was set out in *Liberty Mutual Insurance Co.* v. *Stitzle* (1942), 220 Ind. 180, 185, 186, 41 N. E. 2d 133 as follows:

> "The word 'guest' has more of social than business significance. The words 'without payment for such transportation' imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged received substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. . . .
>
> "We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be 'tangible and direct.' The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material." See also *Webeler* v. *Scholle* (1971), 149 Ind. App. 489, 273 N. E. 2d 765.

More recently the Supreme Court in *Allison* v. *Ely* (1960), 241 Ind. 248, 262, 170 N. E. 2d 371, enumerated the various factors to be considered as follows:

"(1) The motives and purposes which actuate the transaction are of prime importance. (Citations omitted.)

(2) The motivating reasons for the invitation to ride determine the character of the passenger, and the purpose of the trip. (Citations omitted.)

(3) If the purpose of the trip is primarily for business as distinguished from pleasure or social, and the presence of the passenger in the motor vehicle directly compensates the owner or operator thereof in a substantial and material way, then the guest relationship does not exist. (Citations omitted.)

(4) If the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even the payment of money, do not exclude the guest relationship. (Citations omitted.)

(5) The word 'guest' had more 'social' then 'business' significance. (Citation omitted.)"

The last word on the minimal legal requirements to determine the status of passenger for consideration is found in *Furniss* v. *Waters* (1971), 150 Ind. App. 566, 277 N. E. 2d 48, 50, 51 (transfer denied), in which Judge Sullivan stated:

"Was the trial court correct in deciding, as a matter of of law, that there was *not* 'payment' given by Furniss (passenger) to Waters (auto owner and operator) of the kind or character required by the Indiana guest statute so as to exempt Mrs. Furniss from guest status at the time of the collision?"

\* \* \*

"Thus, evidence which shows the flow of benefits, the purpose of the trip, and the motives of the parties in arranging such transportation, must be carefully weighed in order to determine the exact status of the plaintiff. A single factor, such as familial relationship, cannot be held singularly determinative of the issue when other factors are present." (277 N. E. 2d at p. 51)

It is legally permissible to substitute the word "social" in this case for the word "familial" in *Furniss*. To the extent that such is implicit in the trial court's decision on the merits here it cannot be considered as contrary to law.

The facts in *Allison* v. *Ely* permitted only one inference as a matter of law. (At least that was the determination of three members of our Supreme Court over the strong dissent of Judge Arterburn. See 241 Ind. at page 266.) In *Furniss* and *Webeler* more than one inference was permitted. Likewise, in this case more than one inference may be drawn from the evidence. Our conclusion here is bolstered by the reasoning and result in *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N. E. 2d 134.

The facts which would permit the legal conclusion that Appellee was a passenger for hire are as strong here as in *Lawson* v. *Cole* and in *Liberty Mutual Ins. Co.* v. *Stitzle* and as in those two cases we cannot say as a matter of law that there was not a substantial, material benefit to the Appellant as to pay her for the transportation in this case.

In *Furniss* v. *Waters*, 277 N. E. 2d 48, 52, Judge Sullivan discussed whether the payment question is one of fact or law as follows:

"In *Allison* v. *Ely* (1960), 241 Ind. 248, 170 N. E. 2d 371, a 3-2 decision, the majority of the Indiana Supreme Court held the determination of payment to be a matter of law:

'Whether or not the payment here alleged was such as was intended by the Legislature in § 47-1021, supra, where it is said: 'while being transported without payment therefor,' is a matter of law to be decided by the court.' 241 Ind. 248, at 259, 170 N. E. 2d 371, at 376.

But in *Knuckles* v. *Elliott* (1967), 141 Ind. App. 232, 227 N. E. 2d 179, this court interpreted the Allison case, supra, and held that the trial court's determination of payment as a matter of law is concerned with the 'kind' of payment made:

'Whether or not the *kind* of payment here alleged was such as was intended by the Legislature in § 47-1021,

where it is said 'while being transported without payment therefor,' is a matter of law to be decided by the court. *Allison* v. *Ely* (1960), 241 Ind. 248, 170 N. E. 2d 371.' 227 N. E. 179, at 181 (Emphasis supplied)

In his dissent in the Supreme Court opinion in *Allison* v. *Ely* (1960), 241 Ind. 248, 266-267, 170 N. E. 2d 371, Judge Arterburn persuasively reasoned that determination of certain payment factors, e.g., 'intent' of the parties and whether the payments made were substantial, was proper subject matter for consideration by the jury.

Whether the question of payment is properly a matter of law or a mixed question of law and fact seems to depend upon the necessary inferences to be drawn from the evidence before the court. In *Allison, supra,* the holding of the court is properly confined to the principle that payment is a matter of law when there is but one inference to be drawn from the facts:

'In our judgment the only inference that can reasonably be drawn from the evidence here is that the arrangement whereby the parent returned home in one car and the children in another, was solely for the purpose of getting their children home for Thanksgiving more conveniently and expeditiously. Under the decisions of this court and the Appellate Court, such an arrangement cannot be said to be motivated by business reasons.' 241 Ind. 248, at 264-265, 170 N. E. 2d 371, at 379.

Although the trial court, and later the appellee, here have argued that Allison controls as to determination of payment as a matter of law, the case here differs from Allison in two important respects. First, in *Allison* the trial court's refusal to grant a directed verdict on the issue of payment was challenged as opposed to the summary judgment for defendant here. Secondly, the Supreme Court in *Allison* found that but one inference could be drawn from the evidence whereas it must be concluded that several inferences could be properly drawn here."

In this case the trial judge determined that such substantial material benefit was, in fact, present. The evidence in this case permitted such an inference.

In their briefs and oral arguments the parties have treated the passenger for hire status question as the central issue here. We agree. However, Appellant has raised other incidental

issues and has treated them generally in a summary fashion. We will treat them likewise.

The Appellee, Pauline McIntire was not present at the trial of this case. Before trial her deposition had been taken at the instance of the Appellant in which the Appellant's counsel conducted a thorough direct examination. This entire deposition was offered and admitted in evidence. The precise objection to its admission, which was reduced to writing, is as follows:

"MR. CLIFTON: Show the defendant, Dolores M. Schoeff, objects to the plaintiffs using the deposition of plaintiff, Pauline McIntire, for the following reasons:

1. Dr. Thomas James, Jr., who testified specifically stated that said plaintiff was not confined to her home and that she could go outside or downtown in the town of Mt. Etna or Huntington;

2. That although Dr. James stated she was not confined to her home and could be out and about, Dr. James felt that she was too apprehensive about the trial to the Court, without a jury, for her to appear and prosecute her claims;

3. That the basis for using plaintiff Pauline McIntire's deposition is clearly insufficient for most persons are apprehensive with respect to going to Court and there is no reason that a person cannot attend Court if she can go downtown and otherwise perform every day affairs.

The defendant also objects and excepts to the exclusion of page 30 lines 20 through and including page 32 line 20, inclusive."

On this subject Dr. Thomas James, Jr., her treating physician testified, in part:

"Q. As part of your examination were you requested to give your opinion as to whether it would be all right for Mrs. McIntire to appear and testify in this trial?

A. I was.

Q. For medical reasons did you reach any conclusion as to whether it would be injurious to her health to appear and testify?

A. I did.

Q. What is your medical opinion on that, Sir?

A. I feel that it would affect her health.

Q. And did you so advise her?

A. I did.

Q. Does she have a condition at the present time on which you base this opinion?

A. She has.

Q. What is that?

A. She does have a condition and I am treating her for it. Back in June 11, of 1968 she suffered congestive heart failure on the basis of a cardiac arrhythmia and in these cases stress and anxiety is apt to percipitate the arrhythmia again and it is for this reason."

Trial Rule 32 (A) (3) (C) provides in part:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds that the witness is unable to attend or testify because of age, sickness, infirmity or imprisonment; . . ."

The Appellee has cited no authority on this contention except the above quoted provision of Rule 32 (A) (3) (C). We find and hold that the record here is sufficient to justify the trial court to find that the witness was unable to attend for reasons of sickness and infirmity. Such a finding was implicit in the trial court's admission of said deposition and is not reversible error.

The trial court admitted over objection a hospital bill in the amount of $340.55 from Lutheran Hospital rendered to Appellee, Pauline McIntire. The precise objection to the admission of this Exhibit was:

"MR. CLIFTON: At this time, Your Honor, the defendant will object to the introduction of Plaintiff's Exhibit Eleven which purports to be a bill from the Lutheran Hospital, Fort Wayne. To begin with the first part of the objection is that the Doctor practices in Huntington and is admitted to practice in Huntington County Hospital. There is no showing on behalf of any testimony given that he, one, is admitted to practice in the Lutheran Hospital in Fort Wayne or that he in fact even practices there. Two,

I objected previously on the basis that Dr. Glock would be the one who could testify as to whether or not the bill was reasonable for the services therein rendered and whether the confinement of the patient as alleged by this bill was necessary for his treatment. The Doctor again has referred to the records and reports that he has received from Dr. Glock and this is purely hearsay and we are being denied our opportunity to cross-examine Dr. Glock whether this treatment was necessary. I take the position finally that the bill is strictly hearsay, there is no showing that this doctor was there during the time of the treatment or that he had anything to do with the treatment at the Lutheran Hospital and it is purely raw hearsay as to the defendant."

The reasonableness of the Lutheran Hospital bill was stipulated to by the parties before trial. The reasonableness was also established, without objection by the testimony of Dr. James. The necessity for the confinement of Pauline McIntire in Lutheran Hospital was clearly established from the personal knowledge of Dr. James, who also testified that said services were necessary as a result of the injuries suffered in the June 8th accident. The admission of the hospital bill was not reversible error.

The Appellant also objects to the admission into evidence, over objection, of a pair of orthopedic shoes worn by Pauline McIntire. These were offered through the testimony of her husband, Appellee, Gerald McIntire, who previously testified about his wife's health before and after the accident on June 8, 1966 and stated that her right leg is now shorter than her left leg and her right foot is now shorter than her left. Just prior to offering the shoes into evidence Gerald McIntire testified:

"Q. What type of shoes does your wife wear now, Mr. McIntire?

A. She wears a shoe that has to be ordered special.

Q. I hand you Plaintiff's Exhibit 19 for identification and ask if you have ever seen those shoes or shoes similar to those prior to this time?

A. Yes.

Q. And would you tell the Court please where you have seen them?

A. They are my wife's shoes.

Q. Does she wear shoes like that at this time?

A. She wears them at the present time.

Q. Did your wife ever wear shoes like this prior to the accident?

A. No."

These shoes were properly admitted to substantiate the testimony as to the difference in the length of her legs and size of her feet before and after the accident. The Appellant cites no authority to support her contentions of error here and we do not find the admission of these shoes reversible error.

The Appellant's argument on excessive damages covers less than one page and cites no authority. This contention is not well taken. See *N.I.P.S. Co.* v. *Otis* (1969), 145 Ind. App. 159, 250 N. E. 2d 378.

The parties received a fair trial before an able and experienced trial judge and substantial justice was accomplished. There being no reversible error shown, the decision of the trial court is hereby affirmed.

Judgment affirmed.

Hoffman, C.J., concurs; Staton, J., concurs in result.

NOTE.—Reported in 287 N. E. 2d 369.