## 36717. McSEARS v. THE STATE.

HILL, Presiding Justice.

Odell McSears was arrested on July 3, 1979, after his motorcycle wrecked following a high speed chase in LaFayette. He was later convicted of two traffic offenses (reckless driving and attempting to elude an officer; Code Ann. §§ 68A-901, 68A-904), by a 6 person jury in Walker County State Court on June 14, 1980.

Prior to trial, the defendant filed a challenge to the use of a 6 person jury, based on three grounds, and a motion to quash the accusations on which he was tried. The trial court overruled the motions, the jury convicted, and defendant appeals.

Prior to 1980, criminal trials in the State Court of Walker County (misdemeanors) were tried before 12 person juries. Ga. L. 1957, p. 2561, § 18;[1] see also id. § 19; Code Ann. § 59-707;[2] Code Ann. § 24-2109a.[3] In 1980 the General Assembly authorized the State Court of Walker County to provide by rule for 6 person juries. Ga. L. 1980, p. 3102.

Defendant contends that 12-person juries are mandated by general law, Code Ann. §§ 59-707, 24-2109a, supra, and that the 1980 act contravenes the constitutional requirement of uniformity, Art. I, Sec. II, Par. VII (Code Ann. § 2-207). Defendant also contends that the 1980 act cannot be given retrospective application to offenses committed in 1979 and that it cannot be given effect on a case by case basis but must be formally adopted by rule of court.

1. Article I, Sec. II, Par. VII (Code Ann. § 2-207) provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." This constitutional requirement of uniformity of general laws must be read and construed so as to give effect to Art. VI, Sec. IX, Par. I (Code Ann. § 2-3801) of the Constitution, which provides: "Except as otherwise provided in this Constitution, the jurisdiction, powers,

---

[1] Ga. L. 1957, p. 2561, is applicable to the State Court of Walker County. Section 18 provided for 12 person juries. The court became a state court in 1970. Code Ann. §§ 24-2101a, 24-2102a.

[2] Code Ann. § 59-707, applicable in superior courts, provides that misdemeanors shall be tried before juries of 12.

[3] Code Ann. § 24-2109a, applicable to state courts, provides: "All laws with reference to the qualifications, impaneling, challenging, and compensation of jurors in superior courts now of force or such as may hereinafter be enacted in this State shall apply to and be observed in said courts, except where in conflict with the terms of the Act creating said courts." (Ga. L. 1970, p. 679 at 682 § 10.)

proceedings and practice of all courts or officers invested with judicial powers (except State Courts and City Courts) of the same grade or class, so far as regulated by law, and the force and effect of the process, judgment and decree, by such courts, severally, shall be uniform. This uniformity must be established by the General Assembly, and in case of State Courts and City Courts, may be established by the General Assembly."[4]

Pursuant to this provision (Code Ann. § 2-3801, supra) uniformity of proceedings and practice in state courts may be established by the General Assembly, but such uniformity is not required. See *Sellers v. Home Furnishing Co.,* 235 Ga. 831 (1) (222 SE2d 34) (1976); *State of Ga. v. Andrews,* 240 Ga. 531 (2) (242 SE2d 153) (1978).

The General Assembly is authorized by Code Ann. § 2-3801, supra, to reduce juries in state courts from 12 to 6 without violating the constitutional requirements of uniformity (Code Ann. §§ 2-207, 2-3801, supra). This constitutional authorization enables the General Assembly to amend the acts creating state courts, on a court by court basis, to accomplish such reductions. See Code Ann. § 24-2109a (fn. 3) (this provision does not mean that the only changes the General Assembly can make (regarding juries) in the acts creating state courts is to increase their number to 12).

2. Defendant contends that at the time of the offenses charged against him, he was entitled to be tried by a jury of 12, and that the 1980 act, Ga. L. 1980, p. 3102, reducing the jury to 6 is unconstitutional as an ex post facto law. U. S. Const., Art. I, Sec. 10, Cl. 1 (Code Ann. § 1-134). It is true that on July 3, 1979, when the alleged offenses occurred, the State Court of Walker County was utilizing 12 member juries pursuant to Ga. L. 1957, p. 2561, § 18, supra; that the 1980 act became effective prior to the trial of this case; and that the defendant was convicted by a jury of 6 pursuant to the 1980 act.

In Duncan v. Missouri, 152 U. S. 377, 382-383 (14 SC 570, 38 LE 485) (1894), the U. S. Supreme Court stated the rule as follows: ". . . the prescribing of different modes of procedure and the abolition of courts and creation of new ones, leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime, are not considered within the constitutional inhibition [against ex post facto laws]." This statement has been rewritten as follows: "The mode of procedure may be changed so long as the

---

[4] State courts were included with city courts in the 1976 Constitution. *Gresham v. Symmers,* 227 Ga. 616 (2) (182 SE2d 764) (1971), is therefore inapposite.

substantial rights of the accused are not curtailed." The Constitution of the United States, Analysis and Interpretation, Congressional Research Service of the Library of Congress, p. 382 (1972). The "substantial rights" test has been applied by this court. *Winston v. State,* 186 Ga. 573 (1) (198 SE 667) (1928); *Todd v. State,* 228 Ga. 746 (187 SE2d 831) (1972).

The question of whether, after commission of the offense, a reduction in the size of the jury is prohibited as an ex post facto change of law is not an open question. In Thompson v. Utah, 170 U. S. 343 (18 SC 620, 42 LE 1061) (1897), the Supreme Court held that trial by a jury of 12 was a "substantial right", 170 U. S. at 351, 352, and that a reduction in the size of the jury from 12 to 8 was prohibited as an ex post facto law. Although the facts in Thompson are different from those in the case at bar, they are not, in our view, distinguishable. Thompson was indicted for a felony which occurred while Utah was a territory and for which he was entitled to be tried by a jury of 12. After obtaining a new trial, he was retried, and convicted, after Utah became a state, by a jury of 8 as provided in the state constitution. The Supreme Court reversed, saying (at 351): "To hold that a State could deprive him of his liberty by the concurrent action of a court and eight jurors, would recognize the power of the State . . . to take from the accused a substantial right belonging to him when the offence was committed." Later the Court said (at p. 352-353): "The court below substituted, as a basis of judgment and sentence to imprisonment in the penitentiary, the unanimous verdict of eight jurors in place of a unanimous verdict of twelve. It cannot therefore be said that the constitution of Utah, when applied to *Thompson's case,* did not deprive him of a substantial right involved in his liberty, and did not materially alter the situation to his disadvantage."

In Williams v. Florida, 399 U. S. 78 (90 SC 1893, 26 LE2d 446) (1970), the Court held that a jury of 6 in noncapital cases was not a denial of the sixth amendment right to trial by jury. In Ballew v. Georgia, 435 U. S. 223 (98 SC 1029, 55 LE2d 234) (1978), the Court held that a jury of 5 denied a defendant the sixth amendment right to trial by jury. In Williams, the Court rejected the assumption made in Thompson v. Utah, supra, that a 12 member jury was a constitutional requirement (see Ballew v. Georgia, fn. 8). In Ballew, the Court referred to Thompson, saying that that case had been "set to one side" in Williams (435 U. S. at 230). Thus, although set to one side for sixth amendment purposes, Thompson v. Utah has not been overruled or set aside as to its ex post facto holding.

However, in Williams v. Florida, supra, the Court indicated that trial by a jury of 12 is not the "substantial right" it earlier had been

assumed to be, saying (399 U. S. at 100-101): ". . . the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community. But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12 — particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size. It might be suggested that the 12-man jury gives a defendant a greater advantage since he has more 'chances' of finding a juror who will insist on acquittal and thus prevent conviction. But the advantage might just as easily belong to the State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal."[5]

On the other hand, in Ballew v. Georgia, supra, although adhering to Williams v. Florida, in a divided opinion the court noted that post-Williams research showed that reducing the size of juries was detrimental to its functions and to the defense. While Williams v. Florida may have indicated that trial by a jury of 12 was not a "substantial right," the more recent Ballew v. Georgia suggests that it is.

Moreover, Thompson v. Utah is directly in point.[6] We therefore find that the 1980 law, Ga. L. 1980, p. 3102, reducing from 12 to 6 the membership of juries in the State Court of Walker County was ex post facto as applied to this defendant. He is entitled to be retried before a jury of 12.

3. Defendant further challenges the trial of his case by a 6 person jury on grounds that the Walker County State Court failed to adopt the 1980 act by rule of court as required by the terms of the act. Ga. L. 1980, p. 3102. He urges that the announcement by the solicitor

---

[5] It has been intimated that Thompson v. Utah may be contrary to the rule that procedures may change without violating the ex post facto prohibition (see The Constitution of the United States, Analysis and Interpretation, supra, at p. 383; see also Tribe, American Constitutional Law, p. 483 (fn. 7) (1978)).

[6] It should be noted that Thompson v. Utah, supra, was not cited in the motion or argument before the trial court, and the trial judge expressed concern about the ex post facto point.

(prosecutor), made in open court at the direction of the judge, invoking the 1980 act does not comply with the requirement of the act. The defendant argues further that the court cannot, consistent with the 1980 act, exercise discretion so as to impanel 6 or 12 member juries using a case by case determination. Although there is some support for this latter contention in the court's oral ruling on the defendant's motion, the solicitor urges that this is not the situation and thereby concedes that 6 member juries cannot be used on a case by case basis.

While procedures may be adopted by practice, the majority and better rule requires that court rules, like court orders, be in writing and made a matter of record. See 21 CJS 275, Courts, § 173a, 20 AmJur2d 445, 446, Courts, § 83. However, in view of our finding that the 1980 act cannot be applied to this defendant, we need not here decide whether the solicitor's oral announcement on behalf of the court met the requirements of the act.

4. Lastly defendant contends that the trial court erred in refusing to quash the accusations against him because they were issued on affidavits not founded upon the personal knowledge of the affiant and thus were constitutionally inadequate. If this be so, he cannot be retried on these accusations and hence this enumeration must be decided.

At the conclusion of the chase, Lafayette police officers Wells and Edgerton issued the defendant uniform traffic citations.[7] The defendant was bound over from city court to state court and was released on bond. An affidavit as to each traffic citation was prepared in the office of the solicitor of the state court. A lieutenant in charge of the uniformed patrol division of the Walker County Sheriff's Department took the traffic citations and affidavits prepared by the solicitor before a justice of the peace and swore to the affidavits that "from his best information and belief" the defendant committed the offenses set forth in the affidavits (which corresponded to the offenses charged in the citations). The justice of the peace witnessed the affidavits of the lieutenant. The lieutenant took numerous affidavits (30 to 40) to the justice of the peace each time; the officers issuing the traffic citations were not required to execute the affidavits on which the accusations were issued. The lieutenant testified that his affidavits were based solely on information received from reviewing traffic citations issued by police officers, that he did not

---

[7] The traffic citations are not in the record of this case. However, the defendant makes no showing or argument that the citations are not "uniform traffic citations." See *Hyatt v. State,* 134 Ga. App. 703 (2) (215 SE2d 698) (1975).

interview or interrogate the officers, and that he did not see the defendant commit the offenses charged or participate in his apprehension or arrest.

Defendant contends that such procedure is constitutionally inadequate because the affidavits were not based on personal knowledge.

We do not deal here with a crime requiring indictment by grand jury. Nor do we deal here with an arrest warrant. (The defendant was arrested for offenses which occurred in the presence of the officers and he does not contend that his arrest was unconstitutional; see *Hyatt v. State,* supra.) We deal here solely with the constitutional sufficiency of a misdemeanor accusation supported by an officer's affidavit based upon the "best information and belief" of that officer obtained from traffic citations issued by arresting officers in the course of their duties.[8]

It is sufficient if the accusation charging a traffic violation be based upon an affidavit made upon an officer's best information and belief obtained from a traffic citation issued at the time of the arrest of the violator. *Cargile v. State,* 244 Ga. 871 (2) (262 SE2d 87) (1979), and cases cited. It has been found that the constitution does not require that accusations charging misdemeanors be supported by affidavits. *Wright v. Davis,* 120 Ga. 670, 676 (48 SE 170) (1904).[9] It follows that an accusation supported by an affidavit based upon an officer's best information or belief obtained from traffic citations would not be unconstitutional.[10]

The cases of *Holland v. State,* 151 Ga. App. 189 (259 SE2d 187) (1979), *Stone v. State,* 151 Ga. App. 531 (260 SE2d 405) (1979), and

---

[8] Under a 1980 enactment (not applicable here), violations of traffic laws may be tried upon uniform traffic citations without the necessity of accusations and hence without the necessity of affidavits in support of the accusations, Ga. L. 1980, pp. 452, 453; Code Ann. § 27-705 (b). See also Code Ann. § 92A-506, applicable to probate, municipal and police courts. See also Code Ann. §§ 92A-2701, 92A-2702.

[9] Defendant cites a statement in United States v. Morgan, 222 U. S. 274, 282 (32 SC 81, 56 LE 198) (1911): "He cannot be tried on an Information unless it is supported by the oath of some one having knowledge of the facts showing the existence of probable cause." But see Albrecht v. United States, 273 U. S. 1, 6, fn. 2 (47 SC 250, 71 LE 505) (1926). It has been held that an information does not require the support of an oath or verification where the information is not made the basis for an application for an arrest warrant. United States v. Millican, 600 F2d 273, 276 (5th Cir. 1979); see also cases cited in United States v. Pickard, 207 F2d 472, 474 (9th Cir. 1953); see also Rule 7, F.R. Crim. P.

[10] It should be noted that search warrants supported by affidavits based upon information furnished by reliable informants are not constitutionally inadequate. See Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697) (1960).

*Chastain v. State,* 140 Ga. App. 339 (1) (231 SE2d 91) (1976), are inapposite because in those cases there were no affidavits at all. See also *Young v. State,* 146 Ga. App. 167 (3) (245 SE2d 866) (1978). The case of *Bickley v. State,* 243 Ga. 488 (255 SE2d 31) (1979), did not involve the question of the sufficiency of the affidavit (cf. Ga. L. 1980, pp. 452, 453; Code Ann. § 27-705, supra).

The trial court did not err in overruling the motion to quash the accusations. However, the defendant is entitled to a new trial for the reasons stated in Division 2 of this opinion.

*Judgment reversed. All the Justices concur, except Jordan, C. J., and Marshall, J., who dissent. Gregory, J., not participating.*

DECIDED JANUARY 20, 1981.

*Frank M. Gleason, John W. Davis, Jr.,* for appellant.
*David L. Lomenick, Jr., Solicitor,* for appellee.
*Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* amicus curiae.

MARSHALL, Justice, dissenting.

In my opinion, the citations of authority contained in Division 2 of the majority opinion lead to a different result than that reached by the majority.

As stated in Duncan v. Missouri, supra, the prescribing of different modes of procedure is not considered within the un-constitutional prohibition against ex post facto laws so long as no substantial right of the defendant is withdrawn. Under Thompson v. Utah, supra, trial by a jury of 12 was found to be a substantial right under the Sixth Amendment, and it was therefore held that reduction in the size of Thompson's jury from 12 to eight was an unconsti-tutional ex post facto law. Thompson was, however, overruled in Williams v. Florida, supra, in which the court held that a jury of six in a noncapital case is not a denial of the Sixth Amendment right to trial by jury. See Ballew v. Georgia, supra. No question concern-ning the ex post facto law proscription was involved in Williams.

In any event, it seems clear to me that under the foregoing decisions the reduction in the size of the appellant's jury from 12 to six did not deprive the appellant of any substantial right and, thus, did not constitute an unconstitutional ex post facto law.

I respectfully dissent from Division 2.

I am authorized to state that Chief Justice Jordan joins in this dissent.